Sebastian **SHAUMYAN** and **Maria Shaumyan, Plaintiffs–Appellants,**

v.

**SIDETEX CO., INC.,**
**Defendant–Appellee.**

**No. 405, Docket 89–7670.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 28, 1989.

Decided April 3, 1990.

Joanne S. Faulkner, New Haven, Conn., for plaintiffs-appellants.

Steven R. Rolnick and Robert S. Reger, Hamden, Conn. (Rolnick & Reger, Hamden, Conn., of counsel), for defendant-appellee.

Before KEARSE, ALTIMARI, and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

The central question presented by this appeal is whether a home improvement contract that provides for progress payments by the homeowners is a "credit transaction" under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (1988) ("ECOA"). Plaintiffs-appellants Sebastian and Maria Shaumyan appeal from a summary judgment dismissing their complaint,

entered in the United States District Court for the District of Connecticut (Ellen Bree Burns, *Chief Judge*).

The Shaumyans sought to recover damages from Sidetex Co., Inc. ("Sidetex") for violation of the ECOA. They claimed that Sidetex violated the anti-discrimination provisions of the ECOA by requiring the signature of Mrs. Shaumyan on the home improvement contract entered into between the Shaumyans and Sidetex. In response, Sidetex moved for dismissal of the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). It argued that the contract between the Shaumyans and Sidetex was not a "credit transaction" subject to the ECOA. This motion was subsequently converted into a motion for summary judgment, Fed. R.Civ.P. 56(b), and was granted by the district court.

On this appeal, as in the district court, the Shaumyans argue that the home improvement contract with Sidetex is a "credit transaction" under the ECOA. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

On November 10, 1986, Sebastian and Maria Shaumyan entered into a home improvement contract with Sidetex. The contract provided for Sidetex to install siding, replace windows, and perform other related work at the home jointly-owned by the Shaumyans. The contract obligated the Shaumyans to pay Sidetex according to the following schedule: $3,000 deposit; $4,000 at start of work; $3,900 at halfway; $1,950 on completion of siding; $1,950 on completion of storm doors and shutters. In addition, the contract obligated the Shaumyans to pay liquidated damages in the event they breached the agreement after Sidetex ordered the materials. It also contained a disclaimer, which provided:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The contract did not subject the Shaumyans' payments to any finance charges. The total cost of the contracted work, some $14,800, was due and owing upon Sidetex's completion of the final stage of the work.

Sidetex commenced work under the contract, and the Shaumyans made scheduled progress payments of $3,000, $4,000, and $3,900. Performance was not completed, however, because a dispute arose concerning the quality of windows that Sidetex was to install at the Shaumyan residence. *See Sidetex Co., Inc. v. Sebastian Shaumyan, et al.*, CV–87–261076S (Conn. Super.Ct. filed July 30, 1987).

On October 19, 1987, the Shaumyans commenced the underlying action alleging a violation of the ECOA. They asserted that the insistence of Sidetex's salesman that Mrs. Shaumyan co-sign the home improvement contract discriminated against both Shaumyans. According to the Shaumyans, this violated the ECOA, as well as the Connecticut Discriminatory Practices Act, Conn.Gen.Stat.Ann. § 46a–66 (West 1986), and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat.Ann. § 42–110a *et seq.* (West 1987 & Supp. 1989). Sidetex moved to dismiss the ECOA claim for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and to dismiss the state law claims for lack of subject matter jurisdiction, Fed. R.Civ.P. 12(b)(1). This motion was referred to a magistrate, who recommended that it be denied. The recommendation to deny Sidetex's motion to dismiss was approved and adopted by the district court.

The Shaumyans subsequently moved for summary judgment. On this motion, the district court reconsidered the threshold issue of whether the home improvement contract constituted a "credit transaction" under the ECOA. The court concluded that the contract was not a "credit transaction." Accordingly, the Shaumyans' motion for

summary judgment was denied. The district court then reconsidered Sidetex's earlier motion to dismiss the ECOA claim and granted that motion. The court also dismissed the Shaumyans' state law claims for lack of subject matter jurisdiction. This appeal followed.

## DISCUSSION

The Shaumyans contend that their home improvement contract with Sidetex is a credit transaction subject to the anti-discrimination provisions of the ECOA. We disagree.

The ECOA provides, in pertinent part, that it "shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. § 1691(a)(1) (1988). Regulation B, promulgated by the Federal Reserve Board pursuant to the ECOA, see 15 U.S.C. § 169lb(a) (1988), further provides that, "a creditor shall not require the signature of an applicant's spouse ..., other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1) (1989).

■ The statutory definition of "credit" is essential to the correct application of these provisions. The ECOA defines credit as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d) (1988). The meaning of this term is critical to understanding other definitional provisions of the ECOA. The term "creditor," which is central to section 1691 and Regulation B, is defined by the ECOA as "any person who regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e) (1988). The term "credit transaction" is defined, in turn, as "every aspect of an applicant's dealings with a creditor regarding an application for credit." 12 C.F.R. § 202.2(m) (1989). Reading these various definitions together, it is apparent that the ECOA

extends only to instances in which the right to defer payment of an obligation is granted. Absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable. *See Dunn v. American Express Co.*, 529 F.Supp. 633, 634 (D.Colo.1982).

■ Applying these provisions to the present case, we find the home improvement contract between the Shaumyans and Sidetex not to be a credit transaction under the ECOA. The contract did not permit the Shaumyans to defer payment for the work performed by Sidetex. To the contrary, it set forth a payment schedule that obligated the Shaumyans to make incremental payments as the work progressed. These payments, which the Shaumyans made until an unrelated dispute arose, were substantially contemporaneous with Sidetex's performance under the contract. *Cf. Brothers v. First Leasing*, 724 F.2d 789, 792 n. 8 (9th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984) (consumer lease is "credit transaction" under ECOA because it permits deferral of debt); *Markham v. Colonial Mortgage Service Co.*, 605 F.2d 566, 569 (D.C.Cir.1979) (ECOA applies to home mortgage loans).

The Shaumyans argue that, as a remedial act, the ECOA should be broadly interpreted. *See Brothers*, 724 F.2d at 794; *cf. N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2d Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973) (Truth–in–Lending Act, 15 U.S.C. § 1601 *et seq.*). However, while the ECOA is remedial in nature, the plain language of the statute and of Regulation B requires the Shaumyans to establish that the home improvement contract was a credit transaction. The Shaumyans' arguments for a broad interpretation cannot exempt them from this threshold requirement of ECOA applicability.

The Shaumyans argue that, since payment was not simultaneous with performance of the work, the contract was a credit transaction. They rely on *Ketchum v. City of Buffalo*, 14 N.Y. 356, 364 (1856), for the proposition that "[e]very contract for labor, not paid for in advance, is neces-

sarily a contract upon credit, because the labor, when once performed, cannot be re-called." If this proposition were strictly applied, however, countless transactions in which compensation for services is not instantaneous would be characterized as credit transactions. Such indiscriminate application of the ECOA is not appropriate. Since the Shaumyans' payment obligation was substantially contemporaneous with Sidetex's performance, the contract was not a credit transaction.

 Finally, the fact that the contract's disclaimer provision contains a reference to "THIS CONSUMER CREDIT CONTRACT" does not dispose of the issue in the Shaumyans' favor. That language is contract boilerplate and cannot be construed as acquiescence by Sidetex to applicability of the ECOA. Moreover, considering the absence of any contractual right to defer payment, the disclaimer language should not, by itself, render the contract a credit transaction. Reliance on the disclaimer language alone to establish a credit transaction would exalt form over substance.

### CONCLUSION

We have examined each of the Shaumyans' remaining arguments and find them to be without merit. In light of the foregoing, we affirm the judgment of the district court.